Appeal No. 2022-1121
(Serial No. 29/577,270)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

IN RE: JUSTIN SAMUELS, SAMUEL ROCKWELL

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.

## BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

THOMAS W. KRAUSE
Solicitor
AMY J. NELSON
Senior Counsel for Patent Policy and
    Litigation
PETER J. AYERS
Senior Counsel for Patent Law and
    Litigation
BRIAN RACILLA
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

***Attorneys for the Director of the
United States Patent and
Trademark Office***

May 18, 2022

**REPRESENTATIVE FIGURES OF DESIGN CLAIM ON APPEAL**



FIG. 1



FIG. 3

Appx31, Appx32

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF THE ISSUE .........................................................................1

II.  STATEMENT OF THE CASE ........................................................................1

   A.  The Claimed Design:  A Waffle with One Side Having a Waffle Pattern and the Other Side Having a Smooth Surface .................................................1

   B.  The Prior Art: A Dunkin Donuts Breakfast Sandwich with Waffle Buns that Have a Waffle Pattern on One Side and a Smooth Surface on the Other Side ......3

   C.  The PTAB Decision .............................................................................4

III. SUMMARY OF THE ARGUMENT ................................................................8

IV.  ARGUMENT ...............................................................................................11

   A.  Standard of Review ...........................................................................11

   B.  Design Patent Law of Anticipation .................................................12

   C.  Samuels' Claimed Design for a Waffle Having a Waffle-Patterned Side and a Smooth Side Is Anticipated by the Waffle Bun of Dunkin' Donuts Breakfast Sandwich Having a Waffle-Patterned Side and a Smooth Side ..........................13

     1.  Substantial Evidence Supports the Examiner and PTAB's Finding of Anticipation .......................................................................................13

     2.  Samuels' Challenges to the PTAB's Finding of Anticipation Are Unavailing .........................................................................................18

       a.  The Images of the Sandwich Shown During the Video Provide Ample Support for the Finding of Anticipation .......................................19

       b.  The PTAB and Examiner Properly Applied Design Patent Law to Find that the Appearance of the Inner Surface of the Waffle Bun Shown in the Video Is More than Substantial Evidence of Anticipation ............................25

c.  Samuels' Remaining Arguments Regarding the Handling and Use of the Prior Art Waffle Buns in the Breakfast Sandwich Shown in the Video Are Immaterial and Ineffective ................................................................ 35

3.  The Waffle Sandwich Shown in the Video Is Prior Art Against the Claimed Asymmetric Waffle Design ................................................................ 38

V.  CONCLUSION ................................................................ 41

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Apple, Inc. v. Samsung Elecs. Co.*,
    678 F.3d 1314 (Fed. Cir. 2012) ............................................................................27

*Atlas Powder Co. v. Ireco, Inc.*,
    190 F.3d 1342 (Fed. Cir. 1999) ............................................................................11

*Automotive Body Parts Assoc. v. Ford Global Technologies, LLC*,
    930 F.3d 1314 (Fed. Cir. 2019) ............................................................................12

*In re Bigelow*,
    194 F.2d 550 (C.C.P.A. 1952) ........................................................................36, 37

*Blue Calypso, LLC v. Groupon, Inc.*,
    815 F.3d 1331 (Fed. Cir. 2016) ................................................................30, 31, 32

*In re Brandt*,
    886 F.3d 1171 (Fed. Cir. 2018) ............................................................................18

*Chamberlain Group, Inc. v. Techtronic Industries Co.*,
    935 F.3d 1341 (Fed. Cir. 2019) ............................................................................31

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938).............................................................................................12

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002) ............................................................................35

*In re Cornwall*,
    230 F.2d 457 (C.C.P.A. 1956) ..............................................................................38

*Crocs, Inc. v. International Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010) ............................................................................13

*Curver Luxembourg, SARL v. Home Expressions, Inc.*,
    938 F.3d 1334 (Fed. Cir. 2019) ............................................................................12

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) (en banc) ............................................. 13

*Gao v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*,
    2022 WL 1028926 (N.D. Ill. April 4, 2022) ...................................... 23

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) ......................................................... 11

*In re Harvey*,
    12 F.3d 1061 (Fed. Cir. 1993) ........................................................... 36

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
    849 F.3d 1034 (Fed. Cir. 2017) ................................................... 25, 37

*International Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ................................................ *passim*

*In re Jabour*,
    182 F.2d 213 (C.C.P.A. 1950) ........................................................... 36

*In re Jolley*,
    308 F.3d 1317 (Fed. Cir. 2002) ................................................... 12, 19

*In re Jung*,
    637 F.3d 1356 (Fed. Cir. 2011) ......................................................... 18

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
    780 F.3d 1376 (Fed. Cir. 2015) ......................................................... 30

*Lanard Toys Limited v. Dolgencorp LLC*,
    958 F.3d 1337 (Fed. Cir. 2020) ......................................................... 13

*LKQ Corp. v. GM Global Tech. Operations LLC*,
    2021 WL 4865187 (PTAB Oct. 8, 2021) .......................................... 23

*In re Maatita*,
    900 F.3d 1369 (Fed. Cir. 2018) ......................................................... 23

*Monsanto Co. v. Scruggs*,
    459 F.3d 1328 (Fed. Cir. 2006) ......................................................... 22

*Nobel Biocare Services AG v. Instradent USA, Inc.*,
  903 F.3d 1365 (Fed. Cir. 2018) ............................................................. 11

*In re NTP, Inc.*,
  654 F.3d 1279 (Fed. Cir. 2011) ............................................................ 19

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*,
  73 F.3d 1085 (Fed. Cir. 1995) ............................................................. 11

*Sealy Technology, LLC v. SSB Manufacturing Co.*,
  825 Fed. App'x 795 (Fed. Cir. 2020) .................................... 24, 26, 34

*In re Seid*,
  161 F.2d 229 (C.C.P.A. 1947) .............................................................. 35

*Solvay S.A. v. Honeywell Int'l, Inc.*,
  622 F.3d 1367 (Fed. Cir. 2010) ............................................................ 39

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
  358 F.3d 916 (Fed. Cir. 2004) ............................................................. 39

*In re Watts*,
  354 F.3d 1362 (Fed. Cir. 2004) ..................................... 11, 18, 22, 26

*In re Zonenstein*,
  172 F.2d 599 (C.C.P.A. 1949) .............................................................. 37

**Statutes**

5 U.S.C. § 706(2)(E) ................................................................................ 11

35 U.S.C. § 102 .................................................................................. 12, 39

35 U.S.C. § 102(a) ....................................................................... 3, 4, 7, 10

35 U.S.C. § 102(a)(1) ................................................................................. 1

35 U.S.C. § 102(a)(2) ............................................................................... 39

35 U.S.C. § 103 ........................................................................................ 39

35 U.S.C. § 112 ........................................................................................ 24

**Other Authorities**

37 CFR 1.131 ..........................................................................................39

Leahy-Smith America Invents Act, 78 Fed. Reg. 11059, 11073 (Feb. 14, 2013) ....................................................................................10, 39

MPEP § 2151 .........................................................................................39

## STATEMENT OF RELATED CASES

This Court has named this appeal as a companion case to Appeal No. 21-2166 regarding U.S. Patent Application No. 15/168,768.  Although the design patent application in this appeal, U.S. Patent Application No. 29/577,270, does not claim priority to the '768 utility patent application, the appellant argues that the '768 utility application provides evidence that the claimed design in the '270 application was constructively reduced to practice before the initial publication date of the cited prior art.

The Director is not aware of any other appeal in connection with either the '270 design application or the '768 utility application that has previously been before this Court, or that is currently pending in any other court.  The Director is also unaware of any other case pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in this appeal.

## I.    STATEMENT OF THE ISSUE

Samuels[1] seeks a design patent on a waffle having a raised waffle pattern on one side and a smooth, flat surface on the other side.  The Patent Trial and Appeal Board (PTAB) found that the claimed design was anticipated by the bun of the Dunkin Donuts Waffle Sandwich, which appears in a video review of the sandwich.  The question presented is whether the PTAB's determination that Samuels' claimed design was anticipated under 35 U.S.C. § 102(a)(1) is supported by substantial evidence.

## II.    STATEMENT OF THE CASE

### A.    The Claimed Design:  A Waffle with One Side Having a Waffle Pattern and the Other Side Having a Smooth Surface

On September 12, 2016, Samuels filed a design patent application (Appx22-33) – Serial No. 29/577,270 ("the '270 design patent application") – directed to an "ornamental design for a waffle having a waffle pattern side and a smooth side."  Appx30.[2]  Samuels' claimed design is shown in Figures 1 and 3 below.  Appx31, Appx32.

---

[1]    The Director refers to the Appellants Samuels and Rockwell collectively as "Samuels" in this brief.

[2]    Citations to "Appx___" refer to the Joint Appendix.  Citations to "Br. at __" refer to Samuels' opening brief.



FIG. 1



FIG. 3

Samuels' claimed design shows a waffle with one side (e.g., top) having a raised waffle pattern and associated depressions and the other side (e.g., bottom) having a flat, smooth surface. This is also demonstrated in the cross-sectional views of the waffle design depicted in Figure 2 and Figures 8 and 9, which are reproduced below. Appx32, Appx33.



FIG. 2



FIG. 8

FIG. 9

**B.**    **The Prior Art: A Dunkin Donuts Breakfast Sandwich with Waffle Buns that Have a Waffle Pattern on One Side and a Smooth Surface on the Other Side**

The Examiner rejected Samuels' claimed waffle design as anticipated under 35 U.S.C. § 102(a) in view of the Dunkin Donuts Belgian Waffle Sandwich.  Appx2.  The sandwich is shown in a YouTube video entitled "Dunkin Donuts® - Belgian Waffle Breakfast Sandwich Review #328" that was uploaded on August 30, 2016, by the user named "theendorsement" and is available at https://www.youtube.com/watch?v=TN9kBtgTqxM.[3]  An image of the waffle sandwich from the 3:59-minute mark in the video is provided above.



The reviewer provides different views of the waffle sandwich throughout the video, and the Examiner particularly identified the video frame shown at 48 seconds as providing "evidence that the sides opposite the waffle pattern sides are smooth."  Appx3 (citing Appx160-161).  As shown in this video frame at the 48-

---

[3] *See* theendorsement, *Dunkin Donuts® - Belgian Waffle Breakfast Sandwich Review # 328*, YouTube (Aug. 30, 2016), https://www.youtube.com/watch?v=TN9kBtgTqxM (last accessed May 17, 2022) ("Waffle Sandwich Video").  To ensure access, a stored copy of the Waffle Sandwich Video will be provided with the Joint Appendix pursuant to Fed. Cir. R. 30(i) and has been identified in a slip sheet having page number Appx428 in the Joint Appendix materials.

second mark (below), the lower matching waffle bun on the sandwich has

drooped away from the sandwich filling and provides the viewer with a view of

the flat, smooth surface of the inner side of the lower waffle bun.  A screen shot

of the video frame at the 48-second mark is provided:



*See* https://www.youtube.com/watch?v=TN9kBtgTqxM ("Waffle Sandwich

Video").

**C.    The PTAB Decision**

The PTAB affirmed the Examiner's rejection (Appx156-168) of Samuels'

claimed waffle design in the '270 application as anticipated by the Dunkin

Donuts Belgian Waffle Breakfast Sandwich pursuant to 35 U.S.C. § 102(a).

Appx1-11.  In affirming, the PTAB acknowledged the Examiner's finding "that

'[t]he appearance of the waffle having a waffle pattern side and smooth side of

the Dunkin Donuts Belgian Waffle Breakfast Sandwich is substantially the same

as that of the claimed design.'"  Appx2 (quoting Appx159).  The PTAB

reproduced video frames annotated by the Examiner with arrows to identify

where the waffle pattern side and the smooth side of the matching waffle buns are

depicted in the video.  Appx3-4; *see also* Appx160; Waffle Sandwich Video, at

3:58-4:02; *id.* at 0:48.  These annotated figures are depicted below:



| | |
|---|---|
| Dunkin Donuts Belgian Waffle Breakfast Sandwich Review #328 | smooth side disclosed  0:48/4:57 |
| Appx3 (citing Appx159) | Appx4 (citing Appx161) |

The PTAB explained that it understood "the Examiner to be relying on

inherency to establish that the entire inner surface of each waffle will have the

same smoothness/flatness as the portion revealed in the video."  Appx4-5.  After

reviewing the Appellant's arguments, the PTAB confirmed "the Examiner's

finding that the inner side of waffle is necessarily entirely flat" and that the

Examiner's finding "better aligns with the evidence of record."  Appx8.  After

reviewing the video, the PTAB agreed first that the "side view of the waffle suggests that its inner surface is flat, as the edge of the waffle from the side view is linear and lies flush against the egg . . . [and] it can be seen that the egg is flat, which suggests that the inner side of the waffle is, likewise, flat." Appx9; Appx164. The PTAB also concurred with the Examiner that "as the waffle sags at about the 48 second mark, the sandwich opens somewhat, and it can be seen that the inner side is, as suggested, flat." Appx9; Appx160-161. The PTAB agreed further that the coloring of the inner side of the waffle (which "appears to depict a typical coloring/toasting/browning of a cooked waffle") does not depict actual "ridges and valleys of a waffle," Appx9, because in addition to the flat appearance of the inner surface shown in the video, the waffle's "depressions are too deep and are shown at a plane too close to the bottom of the waffle to be double-sided," Appx4 (quoting Appx161-162). The PTAB thus confirmed the Examiner's anticipation rejection, finding that "the evidence presented by the video is substantial" and "[a] reasonable mind viewing the video would agree with the Examiner that the inner side of the waffle is flat." Appx9. Further, the PTAB found that the amount of evidence on the record is sufficient to meet even the "high" standard of "necessarily present" to establish inherency. *Id.*

The PTAB also rejected Samuels' argument that the disclosure of an asymmetrical cooking apparatus in U.S. Patent Application No. 15/168,768,

which was filed on May 31, 2016, and published as U.S. Patent Publication No. 2017/0339965 ("the '965 Publication") on November 30, 2017, proves that the claimed waffle design in the '270 design patent application was reduced to practice before the August 30, 2016 publication date of the Waffle Sandwich Video. Appx9-11. The PTAB concurred with the Examiner's understanding that, under the applicable, current version of 35 U.S.C. § 102(a), "for Appellant to remove the video from the realm of available prior art against the instant application, Appellant must establish that its *effective filing date* precedes the effective date of the video as a publication," which Samuels fails to do. Appx10 (emphasis added). The PTAB also found that "the '965 Publication cannot establish reduction to practice of the claimed design," because the publication "does not show either the 'inner' or 'outer' surface of the actual waffle produced by the device of its cooking apparatus 10 to discern whether the ornamental design thereof is the same . . . ." Appx10-11. The PTAB further found that the Appellant's Declaration fails to demonstrate that the waffle design claimed in the '270 design patent application was reduced to practice before the publication date of the Waffle Sandwich Video because the proffered evidence depicts neither "the waffles produced by the apparatus of the '965 Publication, nor those allegedly sold on June 20, 2016, to discern whether they have the same appearance as the claimed design." Appx11.

Samuels then appealed the PTAB's decision to this Court.

## III.  SUMMARY OF THE ARGUMENT

Substantial evidence supports the PTAB's and Examiner's findings that the Belgian Waffle Breakfast Sandwich shown in the prior art video anticipates Samuels' claimed waffle design.  The video shows the breakfast sandwich has matching waffle buns that each have an outer waffle-patterned side and an inner flat and smooth side, the overall appearance of which is substantially the same as the claimed waffle design having a waffle-patterned side and a flat, smooth side. In addition to the view of the smooth and flat inner surface of the waffle bun shown in the video, other ornamental aspects of the waffle buns' appearance buttress the finding that the prior art waffle buns have the same waffle-patterned side and flat, smooth side as the claimed waffle design.  These findings include that: (1) the inner side of the waffle bun is linear and lies flush against the flat egg filling, (2) variations in color on the inner surface of the waffle bun are not formed by ridges and valleys of a waffle, and (3) the bottom of the depressions in the waffle pattern on the top surface are too deep and too close to the opposite inner edge of the waffle bun to allow space for waffle ridges and depressions on the inner surface.  Collectively, these findings amply demonstrate that substantial evidence supports the PTAB's findings of anticipation, and more specifically its

finding that the entire inner surface of the waffle buns are smooth and flat based on the overall appearance of the prior art waffle buns and sandwich.

Samuels' challenges are contrary to the record, misapply design patent law, and at most suggest harmless error.  In an attempt to rebut the PTAB's findings, Samuels improperly requests that the Court reweigh snippets of the video evidence in view of Samuels' description of a later image of the waffle buns that mischaracterizes and misunderstands what is being shown therein.  Samuels' argument that the partially obstructed view of the flat inner surface of the waffle bun in the video cannot demonstrate that the entire surface of the waffle bun likewise is flat fails because it improperly ignores the totality of the record evidence supporting the PTAB's finding that the entire inner surface is flat and smooth and it fails to take into account that an ordinary observer would understand the video to depict a consistently flat and smooth surface based on the overall appearance of the prior art waffle buns and sandwich in the video.

Samuels' attempt to assign reversible error to the PTAB and Examiner based on their invocation of the doctrine of inherency to support their findings of anticipation, and the Examiner's statements regarding *In re Zahn*, is without avail.  The Examiner and the PTAB properly evaluated the record and articulated why both (1) an ordinary observer would understand the image of the waffle sandwich and the inner surface of the waffle bun in the video to depict a waffle

that has an inner surface that is entirely smooth and flat and (2) the overall appearance of the waffle in the video is substantially the same as the claimed waffle design.  Further, by explaining that the observed spatial limitations created by deep depressions in the waffle's outer pattern and the flush contact between the waffle's inner surface and flat egg filling teach that the entire bottom (inner) surface is smooth and flat, the Examiner and PTAB made the requisite findings to support the finding of anticipation regardless of whether they are analyzed under the ordinary observer test or the inherency doctrine.

Samuels' attempt to distinguish its claimed design based on non-ornamental features, such as durability and taste, also fails because such non-ornamental features are irrelevant to issue of anticipation of a design claim. Moreover, Samuels' reliance on other purported functional features such as roughened surfaces to improve the buns' grip with the egg filling additionally fail because it is based solely on attorney argument and is contradicted by the record—*i.e.*, the actual appearance of the waffle buns in the video.

Lastly, Samuels' argument that the video is not prior art to the claimed waffle design because the inventors conceived and reduced to practice the claimed waffle design before the video was published is without merit.  Under 35 U.S.C. § 102(a) as amended by the Leahy-Smith America Invents Act, a reference's status as prior art is determined by the effective filing date of the

application-at-issue, and evidence of an inventor's prior reduction to practice cannot be used to remove the reference as available prior art. Even if it could, the earlier application does not contain the requisite showing that the disclosed waffles had the same design as the waffles claimed in the '270 design patent application.

## IV.    ARGUMENT

### A.    Standard of Review

Samuels has the burden to show that the PTAB committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Anticipation is a question of fact, and a prior art reference "may anticipate a claim if it describes every element of the claimed invention, either expressly or inherently." *Nobel Biocare Services AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1375 (Fed. Cir. 2018). What a reference teaches is a question of fact. *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995). Whether an element is inherent in a prior art reference is likewise a question of fact. *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999).

The Court upholds fact findings made by the PTAB that are supported by substantial evidence, 5 U.S.C. § 706(2)(E), and reviews the PTAB's legal conclusions *de novo*. *In re Gartside*, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might

11

accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence."  *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).  Thus, this Court has explained that it "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative."  *Id.* at 1320.

## B.     Design Patent Law of Anticipation

Design patents are subject to the same conditions of patentability as utility patents, including anticipation under 35 U.S.C. § 102.  *Automotive Body Parts Assoc. v.  Ford Global Technologies, LLC*, 930 F.3d 1314, 1322-23 (Fed. Cir. 2019).  This Court has held that the "ordinary observer test" is the test for both design patent infringement and anticipation.  *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237-41 (Fed. Cir. 2009); *see also Curver Luxembourg, SARL v. Home Expressions, Inc.*, 938 F.3d 1334, 1342 (Fed. Cir. 2019).  The ordinary observer test is a factual inquiry that determines "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other."

12

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham v. White*, 81 U.S. 511, 528 (1871)).

The ordinary observer test requires the fact finder to compare the appearance of the overall designs to determine how similar they are to each other. *See Lanard Toys Limited v. Dolgencorp LLC*, 958 F.3d 1337, 1343 (Fed. Cir. 2020). The overall visual effect of the designs-at-issue is used to determine whether the claimed design and the prior art design are substantially the same to an ordinary observer. *Crocs, Inc. v. International Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). As this Court has explained, "[j]ust as 'minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement,' so too minor differences cannot prevent a finding of anticipation." *Int'l Seaway*, 589 F.3d at 1243 (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)) (internal citation omitted).

**C.    Samuels' Claimed Design for a Waffle Having a Waffle-Patterned Side and a Smooth Side Is Anticipated by the Waffle Bun of Dunkin' Donuts Breakfast Sandwich Having a Waffle-Patterned Side and a Smooth Side**

**1.    Substantial Evidence Supports the Examiner and PTAB's Finding of Anticipation**

The PTAB properly affirmed the Examiner's finding of anticipation because "'[t]he appearance of the waffle having a waffle pattern side and smooth

13

side of the Dunkin' Donuts Belgian Waffle Breakfast Sandwich is substantially the same as that of the claimed design.'"  Appx2 (quoting Appx159), Appx 9. The PTAB considered the designs of the claimed waffle and the waffle bun of the prior art breakfast sandwich as a whole, comparing the top surface (Appx3), the bottom (inner) surface (Appx4) and the side views (Appx8-9) of the waffles, and the PTAB correctly affirmed the Examiner's finding that they were substantially similar and that an ordinary observer would mistake one waffle design for the other (Appx166-167).  Regarding the bottom (inner) surface of the waffle buns on the sandwich, the PTAB found that "a reasonable mind would accept the video as adequate support for a finding that the inner waffle side is flat over its entire surface," Appx8, and the "evidence presented by the video is substantial," Appx9.

Side-by-side comparisons of the prior art and the claimed design show waffles that each have the same waffle-patterned upper/outer side and smooth and flat lower/inner side.  The record supports four key findings made by the PTAB regarding the appearance of the Dunkin' Donuts Belgian Waffle Breakfast Sandwich and provides ample evidence in support of the anticipation rejection. Appx8-9.  First, the PTAB found that in the video, "as the waffle sags at about the 48 second mark, the sandwich opens somewhat, and it can be seen that the

14

inner side is, as suggested, flat." Appx9.[4]  Second, the PTAB recognized that,

when the video shows the side view of the waffle sandwich, it shows that the

bottom (i.e., inner) edge of the waffle "is linear and lies flush against the egg"

which is placed in the middle of the sandwich between the inner edges of the

waffle buns.  *Id.*  The PTAB found that "as the reviewer opens the sandwich, it

can be seen that the egg is flat," which the PTAB then correctly concludes also

"suggests that the inner side of the waffle is, likewise, flat."  *Id.*; *see also* Waffle

Sandwich Video, at 0:48.  Third, the PTAB found that, while the coloring of the

inner side of the waffle appears to depict typical coloring of a cooked waffle, the

colored marks were not created by actual ridges and valleys of a waffle, but

rather by variations of color that existed on the flat surface of the waffle.  *Id.*

Fourth, the PTAB affirmed the Examiner's finding that "[t]he depressions are too

deep and are shown at a plane too close to the bottom of the waffle for the waffle

to be double-sided."  Appx4 (quoting Appx161-162); Appx8 (affirming

Examiner's positions).  The Examiner supported this finding with annotated

figures provided in the Final Rejection (Appx162) and reproduced below:

---

[4] An image of the video frame at the 48-second mark showing both the inner, flat surface of the lower half of the waffle bun and flat surface of the egg is reproduced in Section II(B), *supra*.



FIG. 1

claimed design

Dunkin Donuts
Belgian Waffle Breakfast Sandwich
Review #328

deep depressions
edge of the waffle near the egg

Both waffles have a single
waffle patterned side and a
smooth side opposite of the
waffle patterned side

FIG. 3

The Examiner further buttressed this finding with the visual evidence that the waffle bun on the sandwich has "deep depressions" that descend down to the bottom edge of the waffle bun, which in turn demonstrates that the other side of the bottom surface is flat because the depth of the depressions "are shown at a plane too close to the bottom of the waffle for the waffle to be double-sided." Appx161-162. In other words, if there was another set of waffle ridges and depressions along the bottom surface of the bun, then the base of the depressions on the top surface could not be located near the bottom edge of the bun, but

rather would necessarily be located in a plane that was much higher than (and, thus, further away from) the bottom edge of the bun, in order to provide space between the depressions on the top surface and those on the bottom surface.

The PTAB correctly found that the video provides visual evidence—*e.g.*, in the screen grab at the 48-second mark—that the inner side of the waffle bun is flat. This video image itself provides substantial evidence to support the anticipation rejection because, as seen, it shows a flat, smooth inner surface on the waffle bun.[5] But, the PTAB went further and buttressed this finding with the additional findings that the video provides visual evidence that (1) the inner edge of the waffle bun is linear and lies flush against the flat egg that has been placed in between the waffle buns, (2) variations in color on the inner surface of the waffle bun were not formed by actual ridges and valleys of a waffle, and (3) the bottom of the depressions in the waffle are too deep and too close to the bottom, inner edge of the waffle bun to allow waffle ridges and depressions on that inner surface. Support for these findings is seen, *e.g.*, in the video frame at the 48-second mark, and further support for the third finding is seen, *e.g.*, in the video frame at the 3:59 mark. Together, these findings provide ample visual evidence to support the PTAB's findings of anticipation. Thus, as the PTAB found, "a reasonable mind would accept" that the appearance of the waffle bun design in

---

[5] *See also* Appx333 ("The portion shown in the video is enough to prove that the entire side is flat and not waffle patterned like the opposite side.")

the video demonstrates that the bottom, inner side is flat and the overall design is substantially the same as that of the claimed waffle, such that an ordinary observer would be induced to purchase one supposing it to be the other. Appx9.

### 2. Samuels' Challenges to the PTAB's Finding of Anticipation Are Unavailing

As the PTAB correctly determined, the Examiner identified substantial evidence in the video to support the anticipation rejection. Appx8-9. Because the Examiner established a *prima facie* case of anticipation, the burden shifted to Samuels to adequately rebut it. *In re Jung*, 637 F.3d 1356, 1365 (Fed. Cir. 2011). However, the scattershot of arguments offered by Samuels do not demonstrate the requisite reversible error, *Watts*, 354 F.3d at 1369, and this Court should affirm the finding of anticipation. *See, e.g.*, *In re Brandt*, 886 F.3d 1171, 1176 (Fed. Cir. 2018) (concluding PTAB did not err by affirming examiner's rejection because appellant failed to overcome *prima facie* case).

The primary focus of Samuels' arguments is directed to the agency's findings that the inner surfaces of the waffle buns on the prior art sandwich are smooth and flat. At bottom, Samuels argues that the PTAB and Examiner erred by failing to provide substantial evidence that "the Dunkin Donuts Belgian Waffle was anything other than a traditional double-sided waffle," and thus, "an ordinary observer would <u>not</u> find the Dunkin Donuts Belgian Waffle to have the same characteristics of the Appellants' claimed subject matter." Br. at 11-12

18

(emphasis in original).  However, as demonstrated in the section above, (1) the

video depicts a waffle bun with a flat, smooth inner surface and an outer surface

design having ridges and depressions as claimed in the application-at-issue and

(2) an ordinary observer would have understood that the inner surface of the bun

was flat and smooth.  *Jolley*, 308 F.3d at 1329.  Samuels' arguments are without

avail and instead improperly invite this Court to reweigh the evidence.  *See In re*

*NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011) (explaining that, under the

substantial evidence standard of review, this Court determines whether

substantial evidence supports the PTAB's fact findings and does not reweigh

evidence on appeal).

> a.    **The Images of the Sandwich Shown During the Video**
> **Provide Ample Support for the Finding of Anticipation**

Samuels offers various arguments that the video fails to provide substantial

evidence that an ordinary observer would find the two designs to be substantially

the same and deceive such an observer to purchase one design supposing it to be

the other.  Br. at 12-30.  Samuels' arguments regarding the video fall into three

general categories.  First, Samuels argues that the inner surface of the waffle bun

shown in the video is not uniformly smooth and flat like those in the claimed

design.  Br. at 12-23.  Second, Samuels argues that the video images are too brief

and fuzzy to provide substantial evidence in this case.  Br. at 25-29.  Third,

Samuels argues that the viewable portion of the inner surface of the waffle bun in

the video is inadequate to demonstrate that the entire inner surface of each waffle bun is smooth and flat. Br. at 26-30. Samuels' arguments fail because they are contrary to the record and the jurisprudence of this Court.

First, Samuels points to the image of the prior art sandwich shown in another frame of the video—namely, the video frame found at the 50-second mark—when the reviewer repeatedly pushes the edge of the bottom bun further down, Br. at 17-20, and contends that the image at the 50-second mark "demonstrates that the 'bottom' waffle has a waffle pattern on both sides of the waffle element." Br. at 18. The video images (cropped to show the sandwich) from the 48-second and 50-second marks are shown below.



The PTAB "carefully" reviewed Samuels' argument and determined that "[c]onsidering the entirety of the disclosure of the Dunkin Donuts Belgian Waffle Sandwich video, we find that the Examiner's position [that the inner side is flat and not waffle-patterned like the opposite, outer side] better aligns with the evidence of record." Appx8; *see also* Appx333. As seen, the video frame at the 50-second mark does not show any ridges or depressions on the inner surface of the bun, it is just a view of the flat inner surface further flexed down. Indeed, it does not rebut the other fact findings that further support that the inner bun surface is flat: the inner side of the buns still lie planar against the egg filling, which is still seen to be flat; the variations in the coloring of the inner surface are not caused by any ridges or depressions on that surface of the bun; and the depths of the depressions of the waffle pattern on the outer side of the buns still are too deep and too close to the plane of the inner edge of the bun to allow for ridges and depressions on the inner surface of the bun. Regarding this final fact finding, Samuels simply argues that "[t]his argument in no way proves that the bottom surface of the waffle is smooth," Br. at 21, but Samuels' argument falls short because (1) it is contrary to what is shown in the record, (2) it fails to address the other related findings that indicate that the bottom surface is flat and smooth and, (3) it does not adequately rebut the Examiner's well-articulated reasoning. *See Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006) (noting that

21

"merely stating disagreement with the trial court does not amount to a developed argument.").

Samuels also briefly argues that the claimed waffles do not have a "deformation" around the edge of the bun like the prior art sandwich allegedly does.  Br. at 14.  Samuels does not define further what is meant by "deformation" in the brief, and it appears that Samuels did not raise this argument before the PTAB; thus, it is forfeited in this appeal. *See Watts*, 354 F.3d at 1367-68. Nevertheless, this argument must yield, because the Examiner and PTAB performed a side-by-side comparison between the top of the waffle bun on the prior art sandwich and the claimed waffle design and found substantial similarities overall, as well as in the appearance of the waffles' top surfaces. Appx2-3.  This Court has explained that minor differences in design cannot prevent a finding of anticipation. *Int'l Seaway*, 589 F.3d at 1243.  But, this is precisely what Samuels now invites the Court to do, yet Samuels does not explain why this minor difference should prevent a finding of anticipation in view of the substantial similarity of the overall appearance of the waffles.

Second, Samuels argues that the video cannot provide substantial evidence in support of the anticipation rejection because the video images of the inner surface of the waffle buns on the displayed sandwich are too brief and fuzzy.  Br. at 25-26, 28-29.  However, it is uncontroverted that the video still frames at the

48- and 50-second marks are part of the video, and it is evident that the frames are sufficiently clear to make out the visual characteristics of the waffle buns, as demonstrated by the PTAB's and Examiner's descriptions of them and the counterarguments made by Samuels.[6]  *See* Appx9.  Further, tribunals have recognized that still images from video frames may be used as part of a patentability analysis.  *See, e.g.*, *LKQ Corp. v. GM Global Tech. Operations LLC*, 2021 WL 4865187 (PTAB Oct. 8, 2021) (using screen captures from YouTube video as prior art); *Gao v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, 2022 WL 1028926, at *5 (N.D. Ill. April 4, 2022) (same).

Third, Samuels argues that, because the video only shows a portion of the inner surface of the waffle bun, it cannot be used as evidence of how the remaining unviewed portion of the bun would appear.  Br. at 26-29.  Samuels' argument fails because it is contrary to law and improperly ignores all of the PTAB's findings of fact regarding how an ordinary observer would understand the inner surface to appear.  *Cf. In re Maatita*, 900 F.3d 1369, 1378 (Fed. Cir. 2018) (determining that an ordinary observer would be capable of understanding a claimed three-dimensional shoe sole design from a two-dimensional planar-

---

[6] Indeed, Samuels argues that visual characteristics shown in the video frame image at the 50-second mark are clear enough to support its contention that the inner surface of the waffle bun is not flat and smooth.  *See* Br. at 14; Appx7-8.

view perspective under 35 U.S.C. § 112). As an initial matter, a fact-finder may rely on the appearance of an image that is partially obscured or obstructed when determining the overall appearance of the design and obstructed feature. *See Sealy Technology, LLC v. SSB Manufacturing Co.*, 825 Fed. App'x 795, 800 (Fed. Cir. 2020) (affirming the PTAB's obviousness determination of design patent in *inter partes* reexamination proceeding). In the *Sealy Technology* appeal, this Court affirmed, as supported by substantial evidence, the PTAB's finding that "although only one vantage point is shown of the [prior art] mattress and [] a blanket covered a portion of the mattress, the image of the [prior art] mattress still depicted eight handles." *Id.* at 800. As substantial evidence in support, the Court identified the PTAB's and examiner's findings that "a designer of ordinary skill in the art would have understood that there is a handle under the red blanket" and unrebutted expert evidence that "a designer of ordinary skill in the art would understand there to be handles with the same design, placement, and proportion, on the opposite side[s]" of the prior art mattress. *Id.*

In the case at bar, the record contains similarly persuasive findings regarding anticipation. As the PTAB and Examiner found, an ordinary observer[7]

---

[7]    The Examiner identified the "ordinary observer" as a consumer who may view the waffle in person or on the video. In particular, the Examiner explained that "[t]he video clearly discloses the smooth side of the waffle for any ordinary observer to see," Appx330, "[t]he sandwich opens in the video, so apparently an ordinary observer could and did open the sandwich," Appx332, and "[i]f an

would understand that the inner surface of the waffle bun is consistently flat and smooth because the video shows (1) the viewable portion of the inner surface is flat and smooth, (2) the inner surface lies flush against a similarly planar egg filling, (3) the depressions on the top side were too deep and too close to the plane of the bottom edge to allow any ridges and depressions on the inner side, and (4) coloration only applied to surface, not caused by physically formed ridges or depressions.  Appx8-9, Appx161-164.  Indeed, the PTAB found that the totality of the evidence demonstrates "that the inner side of the waffle is necessarily entirely flat," *i.e.*, "over its entire surface."  Appx8.  These findings remain unrebutted except by attorney argument, which fails to overcome them. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017).

### b.    The PTAB and Examiner Properly Applied Design Patent Law to Find that the Appearance of the Inner Surface of the Waffle Bun Shown in the Video Is More than Substantial Evidence of Anticipation

Samuels argues that the anticipation rejection should be reversed due to statements that the Examiner made regarding the *In re Zahn* decision during examination of the design patent application.  Br. at 23-26.  At bottom, Samuels' criticism of the Examiner's reference to the *Zahn* decision mirrors its other

---

ordinary observer was walking down a food aisle in a grocery store and saw the [prior art] waffle . . . and then saw [the] waffle of the claimed design in the next aisle, an ordinary observer could easily confuse the two . . . ," Appx160.

arguments that the finding of anticipation should not be based on the appearance of the inner surface of the waffle bun shown at the 48-second mark of the video because part of the view of the waffle's inner surface was obstructed and the image was too quick and blurred. Br. at 25-26. These arguments fail for the same reasons explained above in Section IV(C)(2)(a) of this brief. Further, when the PTAB summarized the Examiner's decision, it did not adopt or otherwise reference the Examiner's statements about the *Zahn* decision; thus, Samuels' argument cannot demonstrate reversible error by the PTAB. *Watts*, 354 F.3d at 1369. The PTAB did not commit any error: it correctly analyzed the appearances of the prior art waffle sandwich shown in the video and the claimed waffle design, carefully reviewed Samuels' arguments, and properly applied design patent law to determine that the evidence supported the Examiner's findings of anticipation in this case. Appx3-9.

To the extent that the Examiner referenced the *Zahn* decision, it was in the context of making the point confirmed by the *Sealy* opinion identified above—namely, that an ordinary observer may view the overall appearance of a prior art product that has a partially obstructed portion and still understand what the obstructed portion looks like in view of other visual aspects (such as continuity,

repetition, or spatial relationship) of the shown components in the prior art.[8]  A

review of the record here demonstrates that the Examiner did not improperly

disregard or ignore any other part of the prior art sandwich that has an appearance

she found to be different than the claimed design; instead, the Examiner

explained how each of the visual characteristics contributed to the finding that the

overall visual impression of the two waffles were substantially the same, such

that an ordinary observer would have been induced to purchase one thinking it

was the other.  Appx333 ("When properly comparing the two designs as a whole,

it is established that the two designs are substantially the same. Both designs

show irregularly-shaped waffles with one waffle-patterned side and one smooth

side that, as a whole, look substantially the same.").

Samuels also challenges the PTAB's and Examiner's invocation of

inherency in the finding of anticipation.  Br. at 19-20, 23-27.  The PTAB noted

that the Examiner "to some extent, relies on inherency to establish the flat inner

surface of the waffle" and more specifically "to establish that the entire inner

---

[8] The Examiner's broader point criticized by Samuels in its brief (Br. at 24), that
an examiner may "rely[] upon features of a reference embodied in less than the
entire article" during examination of a design claim, is also a well-settled
principle.  *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1326-27
(Fed. Cir. 2012) (comparing bezel components in claimed design and prior art
cited in anticipation finding); *Int'l Seaway*, 589 F.3d at 1243 ("Although the
ordinary observer test requires consideration of the design as a whole, this does
not prevent [the fact finder] from determining that individual features of the
design are insignificant from the point of view of the ordinary observer and
should not be considered as part of the overall comparison.").

surface of each waffle will have the same smoothness/flatness as the portion

revealed in the video." Appx4-5 (citing Appx333). The Examiner explained that

"the 'top' waffle used as a reference does not explicitly show the flat side

opposite the outer waffle side," Appx333, but found that the upper waffle bun

and lower waffle bun in the prior art waffle sandwich were "matching," such that

they both had the same outer waffle pattern side and same inner smooth side. *Id.*;

*see also* Appx160-161, Appx164. The PTAB and Examiner buttressed this

finding with additional video evidence from the side perspective view of the prior

art waffle sandwich, which shows that the inner surfaces of the buns (*i.e.*, bottom

of the top bun and top of the bottom bun) are "linear" and lie "flush against the

egg," which also is flat (Appx9), and that "there is not enough space between the

deep depressions of the waffle and the bottom of the waffle and the egg below

the waffle to be double-sided" (Appx164), which in turn demonstrates that the

bottom surface is flat because the depth of the depressions "are shown at a plane

too close to the bottom of the waffle for the waffle to be double-sided,"

Appx161-162. The PTAB and the Examiner found that such evidence, in

addition to the smooth and flat inner surface of the waffle bun shown at the 48-

second mark of the video, demonstrates that the inner surfaces of the matching

waffle buns in the video are smooth and flat like the claimed design. Appx9

("While the 'necessarily' standard to establish inherency is high, the evidence

presented by the video is substantial."); Appx164 ("…evidence from the matching waffle of the sandwich which discloses a smooth bottom and the information gleaned from the perspective view … provide[s] plenty of information that proves that the waffle is waffle patterned on one side and smooth on the other side and not, in fact, double-sided.").

Samuels first argues that the Examiner and PTAB incorrectly applied the law of inherency and extrinsic evidence to find that the prior art waffle sandwich was made with matching buns on the top and bottom of the sandwich, such that the inner (bottom) surface of the top waffle bun has the same flat and smooth appearance that appears on the inner (top) surface of the bottom waffle bun of the prior art waffle sandwich.  Br. at 27-29.  In essence, Samuels appears to be arguing that the Examiner and PTAB improperly combined one surface of top waffle bun with the opposite surface of the bottom waffle bun to arrive at the claimed design.  But, Samuels' contention is unavailing because it is based on the same unsuccessful attorney arguments regarding the quality of the video, the reviewer's handling and discussion of the sandwich in the video, and whether the viewable portion of the inner surface of the bottom waffle bun is sufficient to demonstrate that the entire surface is flat and smooth that have been shown to be unsuccessful elsewhere in this brief.  *See, e.g.*, Section IV(C)(2)(a), *supra*; Section IV(C)(2)(c), *infra*.

Samuels' argument also must yield because the Examiner and PTAB identified ample evidence in the video record to support their findings of anticipation. Although the PTAB and examiner referenced "inherency" to explain their findings about the appearance of the top and bottom surfaces of the matching waffle buns, their findings are more properly viewed as following this Court's line of cases including *Kennametal*, in which this Court "found substantial evidence support for the Board's finding that the reference anticipated the claims even without a particular disclosure of the specific combination recited in the disputed claims." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1344 (Fed. Cir. 2016) (citing *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1383 (Fed. Cir. 2015)). Indeed, the Examiner noted the "extrinsic evidence" that she relies on is found in the video itself—namely, the "matching 'bottom' waffle having a waffle pattern side and a smooth side" on the breakfast sandwich shown at the 48-second mark of the video, Appx333, and "the perspective view that there is not enough space between the deep depressions of the waffle and the bottom of the waffle and the egg below for the waffle to be double-sided," Appx164.

As this Court has explained, it is incorrect to argue that "two embodiments disclosed in a reference can never be considered in combination to make a finding of anticipation," because "a reference can anticipate a claim even if it

does not expressly spell out all of the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination." *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341, 1350 (Fed. Cir. 2019) (quoting *Kennametal*, 780 F.3d at 1381 (internal quotations and brackets omitted)); *see also Blue Calypso*, 815 F.3d at 1343. Here, the case for anticipation is even stronger because the two buns in the sandwich can be more properly viewed as two images in the same embodiment. Thus, the Examiner and PTAB simply applied the teachings about the appearance of the top and bottom buns from the same, sole embodiment shown in the video. The images shown in the video and the totality of the findings regarding the overall appearance of the waffle buns plainly establish that an ordinary observer would "at once envisage" that each waffle bun has a waffle pattern on the outer surface—*see* Appx3 (citing Appx159); Appx4 (citing Appx161)—and is consistently flat and smooth on the inner surface—as shown, *e.g.*, in the video image depicted at Appx4 (citing Appx161) and further supported by the findings of the PTAB and Examiner about the spatial attributes of the sandwich shown in the video (Appx8-9; Appx332).

In other words, an ordinary observer would "at once envisage" that each waffle bun "is not double-sided and has a flat bottom," because the viewable

portion of the bun's inner surface is shown to be flat and smooth and the depth of

the waffle depressions on the outer surface are shown to descend to the edge of

the inner surface of the waffle bun, which sits flush against the flat egg filling and

requires the remaining part of the inner surfaces obstructed from view to be

similarly smooth and flat.  Appx332.  The appearance of each of these aspects of

the prior art waffle sandwich shows that the inner surface of the waffle bun is

smooth and flat like the claimed design.  As the Examiner found "you can *easily*

*understand*" that each of the waffle buns in the prior art waffle sandwich "is not

double-sided and has a flat bottom."  *Id.* (emphasis added); *see also* Appx164

(finding these appearances "provide *plenty of information* that proves that the

waffle is waffle patterned on one side and smooth on the other side and not, in

fact, double-sided.") (emphasis added).  Indeed, the Examiner explained that the

observed spatial limitations created by the deep depressions that extend from the

top side to the edge of the bottom surface and the flush, close contact with the flat

egg filling required that the bottom (inner) surface be smooth and flat along the

entirety of the inner surface.  Appx164; Appx332.  The PTAB also found this

evidence from the video to be so compelling that it concluded "the Examiner's

finding that the inner side of the waffle is *necessarily entirely flat* is supported by

substantial evidence."  Appx8 (emphasis added); *see also* Appx9 ("While the

'necessarily' standard to establish inherency is high, the evidence presented by

the video is substantial."). Thus, even if the anticipation finding is viewed

through the rubric of inherency, substantial evidence supports it, and this Court

should affirm.

Second, Samuels similarly argues that the Examiner wrongly relied on, and

that PTAB wrongly affirmed the Examiner's use of, inherency to support the

assertion that the waffle bun is consistently flat and smooth on its entire inner

surface (*i.e.*, the side that is opposite the side with the waffle pattern) based on

the partially-obstructed view of the inner surface depicted at the 48-second mark

of the video. Br. at 19-20. But, as explained above, this issue may be resolved

by asking whether an ordinary observer would understand that the video depicts a

waffle bun with a flat and smooth inner surface based on the following

disclosures observed in the video—namely, that (1) the portion of the inner

surface of the waffle bun shown is flat and smooth, (2) the waffle bun's inner

surface sits flush against the lateral egg filling, (3) the depth of the depressions on

the upper waffle-patterned surface descend almost to the bottom edge of the

waffle bun, leaving minimal space between the depressions and the inner surface

of the waffle bun, and (4) any variations in coloring are not caused by ridges or

depressions on the inner surface of the waffle bun. *See* Section IV(C)(2)(a),

*supra*. Both anticipation and what a reference teaches are questions of fact.

Here, the PTAB and Examiner found that these observations about the waffle

33

sandwich shown in the video collectively provide more than ample evidence to demonstrate that an ordinary observer would understand the video to depict a waffle bun with an inner side that is flat and smooth along the entire inner surface. *See, e.g.*, *Sealy Tech.*, 825 Fed. App'x at 800.

The Examiner's explanation of why the observed spatial limitations created by the deep depressions in the waffle pattern on the top side of the waffle bun and by the flush and close contact between the bun's inner side and the flat egg filling requires that the bottom (inner) surface of the bun to be smooth and flat along the entirety of the inner surface resolves this argument as well. Appx164; Appx332.  As noted above, the Examiner explained that these observations "provide *plenty of information*" such that one "can *easily understand*" that each of the waffle buns in the prior art waffle sandwich "is not double-sided and has a flat bottom." *Id.* (emphases added).  And, the PTAB found these observations to be so persuasive that it determined that a "finding that the inner side of the waffle is *necessarily entirely flat* is supported by substantial evidence" even though "the 'necessarily' standard to establish inherency is high," Appx8 (emphasis added); Appx9.  Thus, substantial evidence supports this aspect of the anticipation finding under the doctrine of inherency as well, and this Court should affirm.

### c.   Samuels' Remaining Arguments Regarding the Handling and Use of the Prior Art Waffle Buns in the Breakfast Sandwich Shown in the Video Are Immaterial and Ineffective

Samuels argues that the video images of the inner surface of the waffle bun should be discounted because the reviewer did not purposefully open the sandwich to show or discuss the inner side of the waffle buns and because someone who purchases a breakfast sandwich ordinarily would not open it to inspect the inner surface of the waffle bun.  Br. at 7-8, 15.  Samuels' arguments fail for at least two reasons.  First, it is clear that the video shows the inner surface of the waffle bun in the breakfast sandwich – it does not matter that the reviewer did not intend to open the sandwich.  *Cf. In re Seid*, 161 F.2d 229, 231 (C.C.P.A. 1947) ("[A]n accidental disclosure, if clearly made in a drawing, is available as a reference.").  Second, the overall appearance of a prior art product's design is not limited to its visible configuration when purchased or consumed by an end user; rather, the overall appearance is considered throughout the life of the product—*i.e.*, from manufacture to final consumption.  *See Int'l Seaway*, 589 F.3d at 1241 (holding that the district court erred by not comparing the insoles of the patented design with the prior art shoes, because the insoles are exposed and visible at various times throughout the life of the product) (citing *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (holding that it was error to limit the ordinary observer test to visible

35

features at point of sale)).  Samuels attempts to show error here by arguing that the view of the inner surface of the waffle bun provided in the video should be discounted because a fast food customer would not be inclined to inspect the inner surface of the waffle buns after purchasing and while eating the breakfast sandwich.  Br. at 7-8.  Because Samuels' argument is contrary to the record (wherein the reviewing purchaser shows the inner surface) and contrary to the law (which, in any event, does not limit the appearance of the waffle bun design to the point of sale), the PTAB did not err by relying on the view of the inner surface of the waffle bun provided in the Waffle Sandwich Video, and Samuels' criticisms are without merit.

Further, Samuels' arguments regarding the negative review of the reviewer and purportedly inferior quality, taste, and consistency of the waffle sandwich also do not demonstrate any error in the PTAB's decision.  Br. at 14-15.  It is axiomatic that the overall ornamental appearance is the crux of the test for anticipation of a design patent claims, not other non-ornamental (*i.e.*, functional) characteristics such as how well the waffle bun performs or tastes when used as part of the breakfast sandwich.  *See In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993) ("[I]n considering prior art references for purposes of determining patentability of ornamental designs, the focus must be on appearances and not uses.");  *In re Bigelow*, 194 F.2d 550, 552 (C.C.P.A. 1952); *In re Jabour*, 182

F.2d 213, 215 (C.C.P.A. 1950); *In re Zonenstein*, 172 F.2d 599, 600 (C.C.P.A. 1949). Thus, Samuels' reliance on these non-ornamental characteristics to argue that "an ordinary observer would clearly discern the difference between the claimed subject matter and the Dunkin Donuts Belgian Waffle" (Br. at 14-15) is without avail.

Samuels' argument that the PTAB "failed to rule out how the functional features of the Dunkin Donuts Belgian Waffle affect the chosen ornamental design," Br. at 21, likewise must yield. Samuels argues that, in order to grip the purportedly "non-flat, non-smooth surfaces of egg/bacon" between the waffle buns, the waffle bun's inner surface needs to be "uneven, roughened, and having projections," and thus, the inner surface of the bun shown at the 48-second mark of the video cannot be found to be flat and smooth. Br. at 21-22. However, this argument is based solely on attorney argument, which is insufficient to counter the PTAB's fact findings based on the video's express disclosure of a smooth and flat inner surface on the waffle observed at the 48-second mark. *See Icon Health*, 849 F.3d at 1043. Further, Samuels attempts improperly to supplant findings relating to the ornamental appearance of the prior art waffle depicted in the record with contentions about the use and function of the prior art waffle. *See, e.g.*, *Bigelow*, 194 F.2d at 552 (rejecting argument that angle of application (not concavity) of tread ribs, which alters the action of air forces on the tire and varies

37

as related to tire size, is the primary difference between the two designs because the argument "relate[s] to utilitarian features of the design and are without merit in a design case."); *In re Cornwall*, 230 F.2d 457, 459 (C.C.P.A. 1956) ("The fact that appellant's raised portions function as vents while those of [the prior art] are for ornament only is immaterial so far as patentability of the design is concerned, since appearance can only be considered in that connection.").

### 3.    The Waffle Sandwich Shown in the Video Is Prior Art Against the Claimed Asymmetric Waffle Design

Samuels argues that the waffle sandwich featured in the video is not prior art to the claimed design because the inventors reduced the claimed design to practice before the August 30, 2016 publication date of the video.  Br. at 30-31.  Specifically, Samuels argues the disclosure of an asymmetrical cooking apparatus in the '768 utility patent application filed by the same inventors on May 31, 2016, demonstrates that the claimed waffle design in the '270 design patent application was constructively reduced to practice before the publication of the Waffle Sandwich Video.  Br. at 30.  The Board properly rejected Samuels' attempt to "swear behind," or antedate, the prior art waffle sandwich shown in the video by showing prior conception and reduction to practice.  As the Board explained, under the current "first-inventor-to-file" system "for Appellant to remove the video from the realm of available prior art against the instant application, Appellant cannot "swear behind" the video, but must instead establish that its

38

effective filing date[9] precedes the effective date of the video as a publication." Appx10.[10]

Even if Samuels could antedate the video, Samuels fails to establish prior invention of the claimed waffle design to demonstrate a constructive reduction to practice. *See Solvay S.A. v. Honeywell Int'l, Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010) ("[C]onstructive reduction to practice occurs when a patent application *on the claimed invention* is filed." (emphasis added)). Samuels' claim that the disclosure of the '768 utility application by the inventors was a "constructive reduction to practice" of the claimed design is insufficient because the '768 utility application does not include an embodiment that meets all of the limitations (*i.e.*, the overall appearance) of the claimed design in the '270 design patent application at issue here. *Cf. Univ. of Rochester v. G.D. Searle & Co.*,

---

[9] The '270 design patent application was filed on September 12, 2016; thus, the amendments to 35 U.S.C. § 102 by the Leahy-Smith America Invents Act (AIA) apply.

[10] *See also* MPEP § 2151, "Overview of the Changes to 35 U.S.C. 102 and 103 in the AIA" ("The date of invention is not relevant under AIA 35 U.S.C. 102. Thus, a prior art disclosure could not be disqualified or antedated by showing that the inventor invented the claimed invention prior to the effective date of the prior art disclosure of the subject matter (e.g., under the provisions of 37 CFR 1.131)."); Examination Guidelines for Implementing the First Inventor to File Provisions of the Leahy-Smith America Invents Act, 78 Fed. Reg. 11059, 11073 (Feb. 14, 2013) ("AIA 35 U.S.C. 102(a)(1) and (a)(2) make no mention of the date of the invention, but instead concern documents that existed or activities that occurred 'before the effective filing date of the claimed invention.' As a result, it is no longer possible to antedate or ''swear behind'' certain prior art disclosures by making a showing under 37 CFR 1.131 that the applicant invented the claimed subject matter prior to the effective date of the prior art disclosure.").

*Inc.*, 358 F.3d 916, 926 (Fed. Cir. 2004) (explaining that constructive reduction to practice may be used when the application describes the claimed subject matter in a way that establishes the applicant possessed all of the elements and limitations of the claimed invention.)  As the PTAB found, "the '965 Publication does not show either the 'inner' or 'outer' surface of the actual waffle produced [to allow determination of] whether the ornamental design thereof is the same and, thus, whether the design currently claimed was reduced to practice."  Appx10. Furthermore, the Examiner found that the design disclosed in the '768 utility application "could make a large, square waffle with multiple sections, but certainly does not show the waffle in question that is being examined in this [design] application."  Appx220.  Thus, this Court should affirm the PTAB and Examiner's finding that the waffle sandwich shown in the Waffle Sandwich Video is prior art to the claimed design.

## V.    CONCLUSION

The PTAB and the Examiner correctly determined that Samuels' claimed design is anticipated by the waffle sandwich shown in the prior art video.  This Court therefore should affirm the PTAB's decision.

Respectfully submitted,

/s/ BRIAN RACILLA
THOMAS W. KRAUSE
Solicitor
AMY J. NELSON
Senior Counsel for Patent Policy
    and Litigation
PETER J. AYERS
Senior Counsel for Patent Law and
    Litigation
BRIAN RACILLA
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

**Attorneys for the Director of the**
**United States Patent and**
**Trademark Office**

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Federal Rule of Appellate Procedure 32(a)(7) that the foregoing BRIEF FOR APPELLEE – DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation. The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 9,357 as measured by the word-processing software used to prepare this brief.

Dated: May 18, 2022                    Respectfully,

                                       /s/ *Brian Racilla*
                                       Brian Racilla
                                       Associate Solicitor
                                       U.S. Patent and Trademark Office